UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

J.P. a minor, by and through          No. 2:07-cv-02084-MCE-DAD
his mother E.P. and E.P.,
individually,

          Plaintiffs,

     v.                               **MEMORANDUM AND ORDER**

RIPON UNIFIED SCHOOL DISTRICT,
et al.,

          Defendants.

----oo0oo----

Through the present proceeding, Plaintiffs appeal a decision rendered by the Special Education Division of the California Office of Administrative Hearings ("OAH") pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1401, et seq ("IDEA"). Plaintiffs specifically challenge the OAH's decision finding that certain special education assessments evaluating the minor Plaintiff, J.P., were legally sufficient. Both Plaintiffs and Defendant Ripon Unified School District now move for summary judgment. As set forth below, the District's Motion for Summary Judgment will be granted.

1

## BACKGROUND

At the time the educational assessments at issue in this case were obtained, Plaintiff J.P. was a nine-year old student eligible for special education services under the category of Other Health Impairment (OHI), due to attention deficit hyperactivity disorder (ADHD), tics, and dysgraphia. He was enrolled in the fourth grade at Ripon Elementary School, a school within the purview of Defendant Ripon Unified School District ("District"). J.P. became eligible for Special Education services as a second grader in December of 2004.

In August of 2006, after J.P. had been receiving special education services for nearly two years, J.P.'s mother asked a psychologist, Dr. David Rose to assess her son. Dr. Rose concluded that J.P. was suffering from both Autism Spectrum Disorder and Depression. J.P.'s mother forwarded Dr. Rose's report to the District in September of 2006 and requested that additional services be provided commensurate with Dr. Rose's diagnosis.

In response both Dr. Rose's report and consistent with its obligation to assess J.P., as a special needs student, at least once every three years, the District's credentialed school psychologist, Sean Henry, conducted a psychoeducational assessment of J.P. in the Fall of 2006. Cheryl Ramey, a District resource specialist program teacher, also administered academic testing reflected within the actual psychoeducational assessment report prepared by Mr. Henry and dated December 15, 2006.

///

That 26-page report, contained within the Administrative Record ("AR") at pages 106-131, concluded that J.P. was not autistic, although it recommended that J.P. continued to qualify for special education and related services under the OHI category.

In addition to the psychoeducational report, two District speech and language pathologists, Judi Gladen and Sharon Filippi, administered a speech and language assessment to J.P. on October 2, 2006, and thereafter prepared a report summarizing their findings. Given Dr. Rose's diagnosis of autism, Ms. Gladen and Ms. Filippi were asked to determine whether J.P. exhibited the difficulty in communicative social skills normally associated with the disorder. They concluded that J.P. did not exhibit pragmatic dysfunction in that regard despite the fact he had difficulty in applying certain social skills. See AR 132-136.

J.P.'s mother did not agree with the conclusions reached in either of the District's assessments and instead, pursuant to 34 C.F.R. § 300.502, requested Independent Educational Evaluations ("IEEs") at the District's expense. She believed that the district's testing did not validly measure J.P.'s unique needs. The District refused to authorize the requested IEEs and filed a due process hearing request, under 34 C.F.R. § 300.502(b)(2), on February 26, 2007.

The hearing on that request was held over two separate days in May of 2007, and was limited to two narrow issues: first, whether the District's Fall 2006 psychoeducational assessment of J.P. was appropriate and second, whether the concurrently prepared speech and language assessment was also sufficient.

///

3

See AR 97, 849, Reporter's Transcript ("RT"),[1] May 14, 2007,
22:2-6.

The finding in favor of the District on those two issues (AR
848-60) by the Administrative Law Judge ("ALJ") prompted the
present appeal.

**STANDARD**

In adjudicating an appeal from an administrative decision
regarding the rights of students with disabilities, the court is
charged with receiving the record of the administrative
proceeding which, in essence, forms the undisputed facts of the
case.   Though not a "true motion for summary judgment, the
appeal of an IDEA-based due process hearing decision is properly
styled and presented by the parties in a summary judgment format.
Capistrano Unified Sch. Dist. v. Wartenberg, 59 F.3d 884, 892
(9th Cir. 1995).

The standard for district court review under the IDEA is set
forth in 20 U.S.C. § 1415(e)(2), which provides as follows:

> "In any action brought under this paragraph the court
> shall receive the records of the administrative
> proceedings, shall hear additional evidence at the
> request of a party, and, basing its decision on the
> preponderance of the evidence, shall grant such relief
> as the court determines is appropriate."

///

///

---

[1] The Reporter's Transcript consists of three separate
volumes: the first for the Pre-Hearing conducted on May 14, 2007,
and the second and third for the Hearing itself, held on May 29
and 30, 2007.

This standard requires that "due weight" be given to the administrative proceedings. <u>Hendrick Hudson Central Sch. Dist. v. Rowley</u>, 458 U.S. 176, 206 (1982). The amount of deference so accorded is subject to the court's discretion. <u>Gregory K. v. Longview Sch. Dist.</u>, 811 F.2d 1307, 1311 (9th Cir. 1987). In making that determination, the thoroughness of the hearing offer's findings should be considered, with the degree of deference increased where said findings are "thorough and careful." <u>Capistrano Unified Sch. Dist. v. Wartenberg</u>, 59 F.3d 884, 892 (9th Cir. 1995), citing <u>Union Sch. Dist. v. Smith</u>, 15 F.3d 1519, 1524 (9th Cir. 1994). Such deference is appropriate because "if the district court tried the case anew, the work of the hearing officer would not receive 'due weight,' and would be largely wasted." <u>Capistrano</u>, 59 F.3d at 891.

Because of the deference potentially accorded the administrative proceedings, complete *de novo* review is inappropriate. <u>Amanda J. v. Clark County Sch. Dist.</u>, 267 F.3d 877, 887 (9th Cir. 2001). Instead, the district court must make an independent judgment based on a preponderance of the evidence and giving due weight to the hearing officer's determination. <u>Capistrano</u>, 59 F.3d at 892. After such determination, the court is free to accept or reject the hearing officer's findings in whole or in part. <u>Ojai Unified Sch. Dist. v. Jackson,</u> 4 F.3d 1467, 1473-73 (9th Cir. 1993).

While the petitioning party bears the burden of proof at the administrative level, <u>Schaffer v. Weast</u>, 546 U.S. 49, 57 (2005), the party challenging an administrative decision in federal district court has the burden of persuasion on his or her claim.

Clyde K. v. Puyallup Sch. Dist. No. 3, 35 F.3d 1396, 1399 (9th Cir. 2004).

**ANALYSIS**

The IDEA requires a student with a suspected disability to be assessed in all areas related to such disability.  See 20 U.S.C. § 1414(b)(3)(B); 34 C.F.R. § 300.304(c)(4).  Areas of suspected disability may include, depending on the particular student's circumstances, analysis of health development, vision, hearing, language function, general intelligence, academic performance, communicative status, motor abilities, career and vocational abilities and interests, along with the student's social and emotional status.  See id.  California Education Code § 56320(g) further instructs that "special attention shall be given to the unique educational needs" of a child as part of an assessment.  The objective of this regulatory framework is to ensure that the team charged with fashioning the student's Individualized Education Program ("IEP") has enough information to determine the appropriate placement and related services for the particular child, as well as the proper goals and objectives for the child.

No single factor or testing tool can in itself determine whether a student has a disability or is receiving an appropriate educational program.  20 U.S.C. § 1414(b)(2)(B); 34 C.F.R. 300.304(b)(2).

///

///

Instead, in performing a valid assessment in this regard, a district must utilize a variety of tools and strategies to gather relevant functional, developmental, and academic information to determine whether the student is eligible for special educational services. 20 U.S.C. § 1414(b)(2)(A); 34 C.F.R. § 300.304(b)(1). Assessments must be administered by trained and knowledgeable personnel and in accordance with any instructions provided by the author of the assessment tools. 20 U.S.C. § 1414(b)(3)(A)(iv), (v); 34 C.F.R. § 300.304(c)(1)(iv), (v).

In this case, Plaintiffs challenge the ALJ's decision approving the assessments provided by the District, claiming that those assessments were in fact inadequate in reflecting J.P.'s individual needs. As indicated above, however, the Court's task in ruling on that challenge is essentially to review the decision of the ALJ, and the administrative record, on an appellate basis. It must use its independent judgment to determine whether that decision is supported by a preponderance of the evidence as evinced by the record. Capistrano, 59 F.3d at 892.

Significantly, as also set forth above, it would be inappropriate for this Court to try the case anew, and due weight must be given to the hearing officer's decision commensurate with the level of careful consideration demonstrated by the decision itself. Capistrano, 59 F.3d at 891-92.

///
///
///
///
///

## A.    Psychoeducational Testing

Turning first to Sean Henry's psychoeducational testing, Plaintiffs do not dispute that Henry was qualified to administer that testing.  Nor is there any question that a variety of testing methodologies were employed.  Mr. Henry administered the Wechsler Intelligence Scale for Children- 4th Ed. ("WISC IV") to determine J.P.'s current educational level.  A Developmental Test of Visual Motor Integration ("VMI") was obtained in order to assess J.P.'s social and emotional functioning.  Mr Henry further administered a Connor's ADHD rating scale ("Connor's") to examine attention issues, a Behavior Rating Inventory of Executive Functioning ("BRIEF") to scrutinize executive functioning, and a Childhood Autism Rating Scale ("CARS") to determine whether J.P. exhibited any characteristics associated with autism.

In addition to this battery of standardized testing, each of which was designed to assess different types of functional ability (and consequently J.P.'s areas of suspected disability), Sean Henry's assessment also included his own observations of J.P., interviews with J.P.'s mother and his teachers, and a review of records.  The District maintained that Henry consequently addressed all areas of J.P.'s suspected disability, and the Hearing Officer agreed.

In attempting to meet their burden of establishing that the ALJ's decision in that regard was contrary to the law, Plaintiffs rely largely on the argument that Henry impermissibly relied on a single testing modality, CARS, in ruling out autism.

///

Plaintiffs also claim that the CARS assessment, which unequivocally found that J.P. was not autistic,[2] was not consistent with other behaviors identified by Henry elsewhere in his report, and cite testimony from Dr. Rose that additional testing should have been administered. See Plaintiffs' Undisputed Fact ("PUF") 31.[3]

Despite these claims, the ALJ in fact determined that Sean Henry did not rely upon a single testing instrument to explore J.P's potential for autism. As his decision states:

> "Student's claim that Mr. Henry inappropriately relied solely on the CARS to find that Student did not have autistic-like behaviors is not supported by the evidence. Mr. Henry's psychoeducational assessment included a review of Student's file, observations of Student, and interviews of Student's Mother and GE teacher. In addition, other test instruments used by Mr. Henry, including the BASC and the BRIEF, solicited information from Mother and Student's teachers, and provided additional information as to whether Student exhibited autistic-like behaviors. It is clear that Mr. Henry's finding did not impermissibly rely on a single instrument."

See AR 852.

Significantly, although Dr. Rose disagreed with that assessment, the ALJ could and did weigh Rose's testimony and ultimately found it to be unpersuasive.

///

///

---

[2] CARS employs a 15-item behavioral rating scale developed to assist in identifying children with autistim. J.P.'s testing score was 23, putting him squarely within the non-autistic category determined to be between 15 and 29.5. Even mild autism would not have been identified until the testing subject reached a rating of 30. See Henry Report, AR 119.

[3] Even Dr. Rose, admitted, however, that CARS testing generally "has pretty good reliability and validity." RT, May 30, 1997, 156:11-157:20.

In addition to noting that the bare fact that Dr. Rose reached a
different conclusion than Mr. Henry did not make Henry's
assessment inappropriate, the ALJ specifically found after
listening to Dr. Henry's testimony that his "credibility was
diminished by the level of bias he displayed." Id.  It would be
inappropriate for this Court to reweigh the credibility
determinations reached by the ALJ over the course of a two-day
hearing involving multiple witnesses and the introduction of
voluminous evidence. Amanda J., 267 F.3d at 888-89.  To revisit
that weighing process would remove any deference accorded to the
OAH decision, and be tantamount to trying the case anew, an
approach specifically rejected by the Ninth Circuit. Capistrano,
59 F.3d at 891-92.

Additionally, even Dr. Rose conceded that J.P.'s symptom
complex was problematic because any number of things, or a
combination of several factors, could explain J.P.'s underlying
problem.  RT, May 30, 2007, 168:13-16.  He also admitted that the
testing employed by Sean Henry was itself appropriate. Id. at
175:12-176:21.

Plaintiffs have consequently not met their burden in showing
that the Henry Report was legally deficient in that it
impermissibly made findings based on a single testing modality.
Nor is Plaintiffs' claim that Henry failed to adequately consider
J.P.'s available records any more persuasive.  In support of that
contention, Plaintiffs argue that Henry failed to consider a 2004
Mental Health Referral by his predecessor, Bobbie Ables-Smith.
Plaintiffs further assert that Henry failed to comprehensively
review J.P.'s disciplinary history.

With respect to the Mental Health Referral, Henry did testify that he reviewed Ms. Able's December 2004 Assessment Report, which contained the same information set forth in the Referral except in greater detail. RT, May 29, 2007, 219, 231-232. In addition, Mr. Henry summarized the Ables-Smith report in his own December 6, 2006 assessment. AR 108. The importance of Ms. Ables-Smith's findings in any event is minimized by the fact that they were prepared some two years before Mr. Henry's own assessment, at a point in time when J.P. had not yet begun to receive special education services from the District. According to the record, J.P.'s difficulties diminished after he began to receive services. See AR 108-09.

Turning next to J.P.'s disciplinary history, Plaintiffs take issue with the fact that the Ables-Smith report contained additional information concerning in that regard that Sean Henry should have taken into account when preparing his own assessment. Again, however, the evidence shows that Henry unquestionably did review Ms. Ables-Smith's later and more detailed December 2004 Assessment. He also reviewed all recent documentation concerning J.P.'s discipline. Even Plaintiffs' expert, Cheri Worcester, admitted that J.P.'s disciplinary history was "pretty well covered." Defendant's Undisputed Fact ("DUF) 33. Moreover, as indicated above, Mr. Henry's assessment included both interviews and substantial independent assessment of J.P's behavior in a variety of settings. The Henry Report contains almost seven pages of detailed information about J.P.'s behaviors, based on observations both in classroom, at lunch, and during recess, on seven different dates. See AR 122-29, 854.

11

It is disingenuous for Plaintiff to argue that J.P's overall disciplinary history was not taken into account by Sean Henry in preparing his psychoeducational assessment.

**B.    Functional Behavior Assessment**

The Functional Behavior Assessment ("FBA") portion of Sean Henry's December 15, 2006 report is nine pages long and includes both a summary of J.P.'s disciplinary history, a summary of Henry's interviews with J.P.'s mother and his teacher, and an in-depth compilation of Henry's own observations of J.P. on eleven different occasions spanning seven different days. As indicated above, those observations occurred in a variety of different educational and social settings at different parts of the day. At the conclusion of the FBA portion of his report, Sean Henry analyzed four different behavior functions with the evidence he had obtained and pointed to specific areas of concern.

Plaintiffs admit that a FBA is determined on a case by case basis. DUF 31. They nonetheless claim that Henry's FBA fails to pass muster because it did not identify all of J.P.'s maladaptive behaviors so that an IEP relying on his assessment could properly target those behaviors with appropriate intervention techniques. As such, Plaintiffs contend that the FBA failed to properly consider J.P.'s unique educational needs.

Plaintiffs' arguments, which largely mirror their contentions with regard to the efficacy of the Henry Assessment as a whole as discussed above, fare no better as a means of attacking the FBA.

12

1  Sean Henry's report contains data on J.P. pulled from a wide

2  variety of sources, including Henry's own substantial

3  observation.  In arguing that Henry's report was not adequate,

4  Plaintiffs point to the testimony of Cheri Worcester, their

5  expert witness with respect to FBA issues, who opined that Henry

6  did not include specific antecedent and consequence conditions,

7  and did not identify either appropriate alternative behaviors or

8  appropriate functions in that regard.  The ALJ specifically

9  determined, however, that he did not find Ms. Worcester's

10 testimony to be persuasive.  He pointed to the fact that

11 Worcester had met with J.P. for only two and a half or three

12 hours shortly before the hearing, and unlike Henry had never

13 observed him in a school setting.  He also felt that Worcester's

14 reliance on a period of time before J.P. began receiving special

15 education and related services presented an inaccurate picture of

16 J.P.'s current needs.  AR 854-55.  The ALJ's well-reasoned

17 determinations in that regard are entitled to deference.

18     The Court cannot say that the ALJ's criticism of

19 Ms. Worcester's testimony is unfounded; indeed, given the

20 comprehensiveness of Sean Henry's assessment his conclusions

21 appear well taken.  Additionally, it would be inappropriate for

22 this Court in any event to question the ALJ's credibility

23 determination, having heard Ms. Worcester's testimony.  The Court

24 declines to do so, just as it declined to question the ALJ's

25 similar credibility assessments with regard to Dr. Rose's

26 testimony, as discussed above.

27 ///

28 ///

13

The Court finds the FBA, like the remainder of Sean Henry's psychoeducational assessment, to be legally sufficient. It identified J.P.'s problematic behaviors, included data collection through record review, interviews and observations, and contained an analysis based on all that information. AR 122-129.

### C. Speech and Language Assessment

J.P.'s Fall 2006 Speech and Language Assessment was prepared by two speech and language pathologists with a combined total of nearly thirty years of experience. In challenging the propriety of that assessment, Plaintiffs again do not challenge either the credentials of the two speech pathologists, Judith Gladen and Sharon Filippi, or the manner in which the testing was administered.

Substantively, it is also undisputed that Ms. Gladen and Ms. Filippi gave J.P. a battery of tests in order to evaluate his pragmatic language skills. They administered the programmatic portions of the Diagnostic Evaluation of Language Variation ("DELV) and the Comprehensive Assessment of Spoken Language ("CASL"), as well as the Children's Communication Checklist 2 ("CCC-2), the Clinical Evaluation of Language Fundamentals ("CELF) and the Social Language Thinking Sample. See Report, AR 132-36. Ms. Gladen and Ms. Filippi both observed J.P.'s skills themselves in multiple environments (AR 133-34), and obtained parental input though the CCC-2. RT, May 29, 2006, 33-35, 88.
///
///

1    Plaintiffs do not challenge the manner in which the testing

2 done by Judith Gladen and Sharon Filippi was administered.  See

3 DUF 50-51, 54-57.  Significantly, they further admit that the

4 tests were tailored to assess J.P.'s specific areas of need and

5 in fact assess all areas of his suspected disability.  DUF 55.

6 Even Plaintiffs' Speech and Language expert, Theresa Fagundes,

7 could identify nothing inappropriate with respect to the testing.

8 RT, May 30, 2007, 120:11-15.  Plaintiffs nonetheless argue that

9 the Speech and Language Assessment failed to account for J.P.'s

10 unique needs because his parents were not directly interviewed

11 and because some of the observations noted in the report seemed

12 to be contradictory.

13    As already indicated, J.P.'s parents had input into the

14 assessment by way of the CCC-2.  Plaintiffs' attempt to discredit

15 the Speech and Language Assessment on that ground accordingly

16 fails.[4]  In addition, the fact that some findings noted by Gladen

17 and Fillippi were contradictory does not render their report

18 inappropriate.  As the ALJ noted, while the test and

19 questionnaire scores were mixed, the speech pathologists

20 conducted additional observation of J.P. himself in order to gain

21 additional information and insight into J.P.'s pragmatic language

22 skills.  They determined that while J.P. possessed sufficient

23 pragmatic speech and language knowledge, his application of that

24 knowledge appeared inconsistent and/or lacking.

25 ///

26

27    [4] No witness, including Plaintiffs' speech expert,
Ms. Fagundes, offered any testimony that obtaining parental input
28 through formal questionnaires was in any way insufficient or
inappropriate.

Consequently, Gladen and Filippi continued to recommend that special education services be provided to J.P.  See AR 135-136. Significantly, their recommendations were  along the same lines as those made by Plaintiffs' own speech and language expert, Ms. Fagundes.  See AR 856-57.

In sum, Plaintiffs have failed to meet their burden of proof in showing that the ALJ erred in finding the District's Speech and Language Assessment appropriate.

**D.  Timeliness of Defendant's Due Process Request**

In addition to attacking the District's assessments on a substantive basis as enumerated above, Plaintiffs also challenge the due process proceedings that resulted in approval of the District's assessments on timeliness grounds.  Under 34 C.F.R. § 300.502(b)(2), if a parent requests an IEE at public expense, and the school district declines that request, the district must file a due process request "without unnecessary delay."  Here, because J.P.'s mother requested independent assessments on December 21, 2006, Plaintiffs allege that the District was tardy in waiting until February 2006, more than two months later, to file its due process complaint seeking to show that its assessments were appropriate.  As support for that proposition, Plaintiffs cite Pajaro Valley Unified Sch. Dist. v. J.S., 2006 WL 3734289, (N.D. Cal. 2006), which found that the plaintiff district waived its right to contest an IEE request by waiting some three months before filing for due process.  Id. at * 3.
///

1    In Pajaro, however, unlike this case, the delay was

2  completely unexplained.  Here, on the other hand, even after

3  Plaintiffs' IEE request was tendered, the parties continued to

4  discuss provision of an IEE through a series of letters.  See AR

5  171-175.  The evidence shows that the parties did not come to a

6  final impasse in that regard until February 7, 2007, less than

7  three weeks before the District's due process report was filed.

8  Id. at 174-75.  Additionally, as also noted by Defendant, the

9  District's Winter Break also began immediately after the

10  Plaintiffs' IEE request on December 21, 2006, a factor that must

11  also be considered in determining the timeliness of the

12  District's due process request.

13      Whether or not unwarranted delay has occurred must be

14  determined given the facts of each particular case.  Pajaro

15  Valley, 2006 WL 3734289 at * 3.   Given the circumstances present

16  here, the Court cannot say that "unnecessary delay" was present

17  so as to invalidate the underlying due process request made by

18  the District in this matter.  Plaintiffs' request that the

19  District's due process request be invalidated on timeliness

20  grounds is therefore denied.

21

22      **E.   Plaintiffs' Request that Additional Evidence Be
            Considered**

23

24      Both sides agree that this case should be resolved through

25  summary judgment.  (See Def.'s Opening Memo, p. 3, fn. 1).[5]

26  ///

27

28      [5] Concurrently with the District's Motion, Plaintiffs filed
    their own request that summary judgment be granted.

17

Plaintiffs, however, urge the Court to consider additional evidence not submitted at the time of the administrative hearing, in the form of the declaration of Keith Storey. In addition, they request that the Court entertain further testimony from one of the witnessses who testified at the administrative hearing, Cheri Worcester.

In Ojai Unified Sch. Dist. v. Jackson, 4 F.3d 1467 (9th Cir. 1993), the Ninth Circuit articulated the standards applicable to determining whether additional evidence, outside that contained in the underlying administrative record, should be permitted. The Ojai court stated that such determination

> "must be left to the discretion of the trial court, which must be careful not to allow such evidence to change the character of the hearing from one of review to a trial de novo.... In ruling on motions for witnesses to testify, a court should weigh heavily the important concerns of not allowing a party to undercut the statutory role of administrative expertise, the unfairness involved in one party's reserving its best evidence at trial, the reason the witness did not testify at the administrative hearing, and the conservation of judicial resources."

Id. at 1472-73. As the First Circuit noted in Roland M. v. Concord Sch. Comm., 910 F.2d 983 (1st Cir. 1990), laxity in permitting additional evidence would "reduce the proceedings before the state agency to a mere dress rehearsal by allowing appellants to transform the Act's judicial review mechanism into an unrestricted trial de novo." Id. at 997.

With respect to the Storey Declaration, Plaintiffs present no convincing reason or argument why the evidence in question was not presented at the time of the administrative hearing.

///

1  Indeed, Dr. Storey was listed as an expert witness in Plaintiffs'
2  initial disclosure pursuant to Federal Rule of Civil Procedure
3  26.  See Ex. A to Decl. of Tamara Loughrey in Support of Reply to
4  Def's Opp. To Pls.' Mot. for Summ J.  In addition, the proposed
5  declaration from Mr. Storey pertains to the propriety of the
6  District's FBA, a subject on which another of Plaintiffs'
7  experts, Cheri Worcester, already offered substantial testimony
8  at the time of the hearing.[6]  This Court agrees that allowing
9  Mr. Storey's declaration at this juncture would be improper and
10 denies Plaintiff's request in that regard.

11      Secondly, with regard to the Court entertaining additional
12 testimony from Ms. Worcester concerning the propriety of any
13 Behavior Support Plan ("BSP") reached by the District in reliance
14 on the assessments it generated, the Court agrees that the
15 present controversy only concerns the adequacy of the assessments
16 themselves.  The BSP is not a component of the underlying
17 assessments; instead, it is a subsequent decision reached in
18 reliance on the FBA.  Since the only issue adjudicated by the ALJ
19 concerned the assessments themselves, and not any use to which
20 the assessments might later be made, any additional testimony by
21 Ms. Worcester concerning the BSP is irrelevant and will not be
22 permitted.
23 ///
24 ///
25 ///
26

27      [6] While Plaintiffs claim that Ms. Worcester in fact was
   unable to testify fully about the FBA at the time of the hearing,
28 any misapprehension in that regard on Plaintiffs' part does not
   justify permitting further evidence at this time.

**CONCLUSION**

After a two-day hearing, the ALJ issued a thorough and detailed decision finding that the District's assessments were appropriate.  That well-reasoned determination is entitled to deference by the Court, and Plaintiffs have not met their burden of proof in convincing the Court otherwise.  The Court finds by a preponderance of the evidence that the assessments generated by the District were appropriate, and that the District accordingly had no obligation to provide Plaintiffs with an independent educational assessment at public expense.  The District's Motion for Summary Judgment is accordingly GRANTED, and Plaintiffs' cross-motion seeking a finding overturning the ALJ's decision approving those assessments is DENIED.  Plaintiffs' request that additional evidence be permitted in the Court's review of the underlying administrative decision is also DENIED.[7]

IT IS SO ORDERED.

Dated: April 14, 2009

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

---

[7] Because oral argument was not of material assistance, the Court ordered this matter submitted on the briefs.  E.D. Cal. Local Rule 78-230(h).